50 So.2d 740

### PENN MUT. LIFE INS. CO. OF PHILADELPHIA v. MALLORY.

#### 7 Div. 32.

Supreme Court of Alabama.

Jan. 18, 1951.

Rehearing Denied March 1, 1951.

Benners, Burr, Stokely & McKamy and Samuel H. Burr, all of Birmingham, for appellant.

258

Knox, Jones, Woolf & Merrill, of Anniston, for appellee.

BROWN, Justice.

The bill in this case was filed by the appellee (the insured) against the insurer (appellant) under the declaratory judgment act. Code 1940, Tit. 7, § 156 et seq. The bill alleges that on July 18, 1927, by policy contract No. 1289792, for a valuable consideration towit the payment of an annual premium of $216.40 the respondent insured the life of complainant against his death in the sum of $10,000, which at the filing of the bill was in full force and effect and that said policy was the property of. the complainant. The bill further alleges that:

"Said insurance policy provided that dividends, which were payable under the terms of same, could be left with the Company and applied to increase the paid up insurance value of said policy and complainant avers that he elected to allow said dividends to remain with the Company to accumulate for said purpose and that he never withdrew the same. And complainant further avers that on, to-wit August 13, 1942, said defendant, acting by and through its general agent, L. M. Bargeron, of Birmingham, Alabama, who was general agent of said company in the State of Alabama, *proposed to complainant that upon payment in advance of five annual premiums at a cost of $1,022.50 said policy would be marked paid in full, meaning that no further premiums would be due thereon.* Complainant avers that he accepted said proposal and did, on to-wit, August 17, 1942, pay to respondent said sum of $1,022.50, representing a payment in advance of premiums on said policy for a period of five years; that none of said premiums were due at said time, but the same were paid before maturity by complainant in consideration of respondent's promise and agreement to mark said policy fully paid upon receipt of said sum. Complainant further avers that no other premiums were collected, or paid, or demanded, on said policy, until, to-wit, June, 1948, at which time complainant received a notice from respondent to the effect that an annual premium of $216.40 was due thereon on July 15, 1948, and that unless the same was paid before said date, or within thirty days thereafter, said policy and all payments thereon would be forfeited and void, except as to certain non-forfeitable rights thereunder. In order to prevent a forfeiture of said policy and loss of rights thereunder, complainant paid said sum to defendant, under protest, and reserved the right to recover same in the event that it should be adjudicated by a court of competent jurisdiction that said policy was fully paid and that no further premiums were due thereon.

"Complainant further avers that notwithstanding the facts averred in the last preceding paragraph hereof, and the payment of said sum of $1,022.50 to respondent, said respondent has failed and refused to recognize and treat said policy as a paid up policy and has failed to mark or endorse same as paid up, but on the other hand has notified complainant that further premiums will be due thereon, annually, from year to year, and that the same will not become a paid up policy until the payment of eleven additional annual premiums thereon, and complainant avers that a justiciable controversy exists between complainant and respondent as to whether or not said policy is fully paid, and complainant has no adequate remedy at law, or otherwise, except by this bill of complaint, for the settlement of said controversy and the determination of his rights under said insurance policy."

The bill prays, upon final hearing, the court will adjudicate and determine all controversies existing between the complainant and respondent arising out of said policy of insurance and will decree specifically that said life insurance policy is paid in full and that no further premiums will accrue thereon; that the respondent be required to endorse on said policy that the same is paid in full and that complainant be awarded a money judgment for $216.40, the amount of the premium paid under protest with the filing of the bill. The bill also prays for general relief.

The defendant demurred to the bill on the following grounds: for want of equity; that the complainant has a plain and adequate remedy at law and that the allegations of the bill are vague, indefinite

and uncertain. On submission on the demurrer the court overruled the same and this ruling is made the basis of one of the assignments of error. The demurrer was not well taken and the same was overruled without error. Tuscaloosa County v. Shamblin, 233 Ala. 6, 169 So. 234.

The defendant then filed an answer admitting the averments of paragraphs 1 and 2 and attached as Exhibit A to said answer the policy contract issued to the complainant, making the same a part of said answer. The answer further alleges that complainant in his application for the policy elected that dividends or surplus should be left with the company to accumulate at interest and used to mature the policy as an endowment or in the event of death of the insured before such maturity, the annual surplus dividends would be added to the face of the policy, as provided in the contract.

The answer denied that its General Agent L. M. Bargeron or any other person acting on behalf of respondent made an offer to complainant to make the policy fully paid upon payment of five annual premiums in advance, but admits that on or about August 17, 1942, it received from complainant the sum of $1,022.50 as advance payments of five annual premiums, which he had the option to make under the terms of said policy. The answer further alleged that under the terms of said policy said sum of $1,022.50 was an insufficient payment to have said policy marked paid up, that the correct amount for such purpose was $2,589.10.

The answer alleges that the letter of August 13, 1942, which the bill treats as a proposal by the defendant to negotiate a new contract, different from the provisions of the policy, was written by a subordinate employee—the stenographer—in Bargeron's office and through inadvertence or mistake embodied the following statement: "We have been advised by the Home Office that, to mark your Policy #1289792 Full Paid for $10,000.00, it will be necessary that five annual premiums be paid, paying premiums to July 15, 1948, at a cost of $1,022.50" and was not for such purpose or intended as

such. The correspondence between the parties leading up to the advance payment and the receipt given therefor are set out in the answer and were included in the note of testimony.

Upon submission upon pleadings and proof duly noted the circuit court entered a declaratory decree declaring that the policy of insurance issued to the complainant on July 18, 1927, was fully paid up by the five payments made by the plaintiff as alleged in the bill and rendered a money decree against the defendant for the amount of the premium paid under protest as alleged in the bill. From that decree this appeal is prosecuted.

The evidence is without dispute that on July 18, 1927, R. G. Mallory purchased a policy of insurance from respondent. He testified that the soliciting agent who sold him the policy told him that it would be "paid up" in twenty-one or twenty-two years if dividends were left with the company to accumulate and if the prevailing dividend rate was maintained. In June or July, 1942, the insured inquired by mail of Bargeron, the General Agent of the company, as to the amount that would be required to pay five annual premiums in advance. His letter was a simple inquiry seeking information and no reference was made in it to the matter of a paid up policy. In reply he received a letter from L. M. Bargeron advising that he would take the matter up with the home office and shortly thereafter he received another letter from Bargeron stating that the home office had advised that his policy would be "full paid" upon payment of five annual premiums and that the amount of same would be $1,022.50. He was further advised that to take advantage of the proposal he must forward a check and execute a form that was enclosed by a certain specified date (August 30, 1942). Within the time specified Mallory forwarded to the general agent a check for the amount required and executed the form as directed. Shortly thereafter he received the company's official premium receipt, showing payment of said five premiums, stating "The five premiums due the 15th of July 1943, 1944, 1945, 1946 and 1947." This receipt did not purport to be

for any other premiums than those mentioned. The amount so paid by Mallory was promptly transmitted by General Agent L. M. Bargeron to the home office of the insurance company in Philadelphia. The company retained and still retains the premiums and has never at any time offered to refund the same to the insured.

The insured testified that he did not know and had no means of knowing when the policy would be "paid up" according to its terms. The transaction on its face shows that no necessity existed for further notice of payment of premiums until the five years expired, when Mallory was given notice from the company, indicating that a premium was due on the policy. Upon taking the matter up with the company he was informed of the inadvertence or mistake made in the information furnished to him in 1942 as to the amount necessary to pay up said policy and that in fact the policy was not paid up and that the policy would lapse unless the premium then demanded ·was promptly paid.

The evidence is without dispute that the letter from Mr. Bargeron's office as to the number of premiums to be paid to make the policy a paid up policy was the result of a mistake on the part of a subordinate clerical employee in Mr. Bargeron's office. The evidence is also without dispute that Bargeron was the general agent of appellant and Mallory had no notice or knowledge of any limitation on his authority as such.

There is a failure of proof showing or tending to show that the defendant's agent Bargeron or anyone else connected with the defendant company "proposed to complainant that upon payment in advance of five annual premiums at a cost of $1022.50 said policy would be marked paid in full." The whole evidence including the testimony of the· complainant is to the effect that complainant did not act upon any such proposal or offer. The evidence is without dispute that the complainant received no proposal to make a new contract or to alter the provisions of the policy contract issued to him by the defendant in making said advance payments. In the beginning he was merely seeking information by his correspondence with Bargeron as to how much money would be required to pay the premiums in advance for five years. The evidence shows that under the terms of the policy contract and the prevailing rate for accumulation of dividends after the advance payment of five premiums that the policy contract required additional payment of six or more premiums, including the $216.40 paid by the complainant under protest, before the policy would become fully paid.

The appellee cites numerous authorities relating to reformation of instruments holding a mistake to justify reformation must be either a mutual mistake or.a mistake on the part of one party and fraud on the part of the other. This is not a bill to reform a contract but a bill seeking a declaratory judgment that under the terms of a new contract, entered into by the parties providing that upon the payment of $1022.50 in advance, covering five premiums, the result of a proposal on the part of the defendant through its general agent and an acceptance thereof by the complainant, the policy issued to the complainant on July 18, 1927, became a paid up policy. The cited authorities dealing with reformation of contracts are not apt in this case.

The appellee also insists that the defendant is estopped to show that the policy was not paid up by the advance payment of five premiums. The doctrine of estoppel under our decisions is protective only and is to be invoked as a shield and not as a weapon of offense. It is not effective to create a cause of action and "should not in any case be made the instruments of gain or profit."—Lindsay v. Cooper, 94 Ala. 170 (184), 11 So. 325, 330, 16 L.R.A. 813; McCarty v. Gant, 248 Ala. 668, 29 So.2d 136.

There is an absence of evidence showing that the complainant suffered any detriment through said alleged mistake. The defendant's receipt given for the advance premiums paid shows the payment made was for the five subsequent years and nothing more. Moreover, the policy of insurance was in his possession and he had full opportunity to resort thereto to ascertain what

262

it provided with reference to advance payment of premiums. There is an absence of evidence showing that the complainant made any request during the five years to the defendant or to Bargeron to endorse on said policy or give him any other statement showing that the payment of said five premiums rendered said policy a paid up policy.

We are, therefore, of opinion that the circuit court erred in its decree in declaring said policy to be a paid up policy and also in rendering a money judgment against the defendant for the premium paid under protest after notice of its due date was given to the insured. Said decree of the circuit court is, therefore, vacated and annulled and one here rendered declaring that the complainant is entitled to maintain his policy by paying the future premiums accruing as they mature or in advance as he may elect, and the defendant is restrained from declaring a forfeiture of said policy until the complainant has had reasonable time and opportunity to comply with the terms of the policy and make such payments as may be due and unpaid. Such reasonable time being fixed as sixty days from the filing of the mandate of the Clerk of the Supreme Court with the Register of the circuit court.

Reversed and rendered.

LIVINGSTON, SIMPSON and STAKELY, JJ., concur.