*1194
On Application for Rehearing

PER CURIAM.
This court’s opinion of November 6, 2015, is withdrawn, and the following is substituted therefor.
Byron Stouffer (“the father”) petitions this court for a writ of mandamus directing the Russell Circuit Court (“the trial court”) to enter an order vacating its August 26, 2015, order and all other orders issued in case no. DR-14-53.01 based on its purported lack of subject-matter jurisdiction. We deny the petition.

Procedural History

The father and Heather Stouffer Wilson (“the mother”) were divorced by a judgment entered by the Hoke County District Court in North Carolina (“the North Carolina court”) on August 25, 2003; that judgment incorporated a settlement agreement entered into by the parties that, among other things, awarded the parties joint , legal custody of the parties’ child, C.J.S. (“the child”), and awarded the father primary physical custody of the child, subject to the mother’s visitation. On August 15, 2007, ,the North Carolina court entered a judgment incorporating an agreement of the parties that, among other things, awarded the parties “joint permanent custody ... with the [mother] having the primary custody and the [father] having the secondary custody” and also awarded standard visitation to the father (“the North Carolina modification judgment”).
The mother and the father were previously before this court in appeal no. 2140061, in which we affirmed, without an opinion, a September 19,2014, judgment of the trial court declining to modify custody of the child pursuant to the father’s custody-modification petition following the trial court’s domestication of the North Carolina modification judgment. See Stouffer v. Wilson (No. 2140061, July 10, 2015), — So.3d - (Ala.Civ.App.2015) (table). This court entered its certificate of judgment in Stouffer on July 29, 2015. We note that, although the trial court, in its September 19, 2014, judgment, declined to transfer sole physical custody of the child to the father, as requested in the father’s petition, the trial court awarded the father “liberal visitation to be agreed between the parties.”[1] Because that award differed from the North Carolina modification judgment, which had awarded the father specified visitation, the trial court’s September 19, 2014, judgment modified the North Carolina modification judgment in accordance with Ala.Code 1975, § 30-3B-102(H),[2] a part of Alabama’s version of the *1195 Uniform Child Custody Jurisdiction and Enforcement Act (“the UCCJEA”), Ala. Code 1975, § 30-BB-101 et seq. The father did not challenge that part of the trial court’s judgment in Stouffer modifying his visitation with the child.
On July 22, 2015, the mother filed in the trial court a petition for a finding of contempt against the father. She asserted, among other things, that, at that time, she was a resident of Colorado, having recently moved from Alabama to that state, and that, on July 19, 2015, the date on which the father’s summer visitation with the child in Pennsylvania, where the father resides, was to end, the mother had received a text message from the father informing her that he was not returning the child to her custody. The mother sought the issuance of an instanter order requiring the father to return the child to her custody, an award of temporary and exclusive custody of the child to the mother, and pendente Kte relief. The trial court filed an instanter order on July 22, 2015, ordering law-enforcement authorities to dispatch a deputy to facilitate the orderly transfer of the child from any person who had custody of the child to the mother. On that same date, the trial court entered an order denying the mother’s request for pendente lite relief. Also on July 22, 2015, the father filed an answer to the mother’s contempt petition and a custody-modification petition, seeking primary physical custody of the child.
On July 27, 2015, the mother filed in the Franklin County Branch of the Court of Common Pleas of the 39th Judicial District of Pennsylvania (“the Pennsylvania court”) a petition for registration of the trial court’s September 19, 2014, judgment and its July 22, 2015, instanter order and for the “expedited enforcement” of both. In her petition, the mother asserted, among other things, that Pennsylvania law-enforcement authorities had been unwilling to facilitate the transfer of the child without first having the trial court’s July 22, 2015, instanter order registered in Pennsylvania. She sought attorney’s fees, an expedited hearing, immediate custody of the child pursuant to the orders of the trial court, and an order requiring law-enforcement authorities to assist her in obtaining physical custody of the child. On July 28, 2015, the Pennsylvania court entered an order registering the trial court’s September 19, 2014, judgment and its July 22, 2015, instanter order; awarding the mother sole physical custody of the child; and ordering Pennsylvania law-enforcement authorities to enforce the terms of the Pennsylvania court’s order. - The mother filed a petition for a finding of contempt against. the father in the Pennsylvania court on August 4, 2015; she asserted therein, among other things, that the child had refused to leave the father’s home despite the best efforts of the Franklin County Sheriffs Department (“the Pennsylvania sheriffs department”). The mother requested that the Pennsylvania court set a contempt hearing, that it order the father to appear in court with the child, and that it enter an order directing the Pennsylvania sheriffs department to physically remove the child from the father’s home and transfer him to the mother’s custody. On August 6, 2015, the fa *1196 ther filed in the Pennsylvania court an emergency petition for special relief. The father sought sole physical custody of the child based on his concerns for the child’s safety and best interests.
On August 13, 2015, the Pennsylvania court entered an order finding that temporary emergency jurisdiction existed under Pennsylvania’s version of the Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa. Cons.Stat. Ann. § 5401 et seq., concluding that, due to safety concerns for the child, an emergency situation existed and suspending enforcement of its July 28, 2015, order directing that the child be returned to the mother’s custody. The Pennsylvania court, repeatedly noting the temporary nature of its emergency order, further indicated that it was “in no way assuming permanent jurisdiction” and that the trial court would be contacted and advised of the emergency order. The Pennsylvania court entered a second order on August 13, 2015, concluding that the father’s actions had not been willful with regard to the child’s failure to return to the mother and denying the mother’s contempt petition. On August 14, 2015, the Pennsylvania court entered an order indicating, among other things, that it had conducted an emergency hearing pursuant to the father’s request that it exercise temporary emergency jurisdiction as to the child; that the Pennsylvania court had contacted the trial court; and that, “for the six months prior to the filing of [the] proceedings [in the Pennsylvania court] the child’s home state for jurisdictional purposes remains ... Alabama.” The Pennsylvania court ordered that its August 13, 2015, emergency custody order would terminate on November 11, 2015, and it directed the parties to resume proceedings in the trial court within that period.
On August 19, 2015, the mother filed a motion in the trial court seeking an emergency order from the trial court setting a hearing and awarding her “sole permanent and exclusive custody” of the child. The trial court entered an order setting the mother’s motion for a hearing on August 26, 2015. On August 21, 2015, the father filed in the trial court an objection to the setting of an emergency hearing and a motion seeking to “transfer jurisdiction”— i.e., to cede jurisdiction to determine issues relating to the child’s custody—to Pennsylvania. In his motion to transfer jurisdiction, the father admitted that, for purposes of the present case, Alabama would be the home state of the child, although he also argued that, as between Alabama, Pennsylvania, and Colorado, it would also be the least convenient forum. The trial court entered an order on August 26, 2015, noting that, at the healing on that date, the father had appeared through counsel and that the father’s counsel had moved to dismiss the father’s request to modify custody, which the trial court had granted. The trial court stated, in pertinent part:
“[The father] submitted himself to the jurisdiction of this Court on July 22, 2015, by seeking yet another modification of custody then decided, once he got a favorable ruling in [the] Pennsylvania [court] that [this court] no longer had jurisdiction.
“This Court does not find it necessary to decide whether or not it had continuing jurisdiction to modify custody since there is no request to modify pending before it. The only issue is whether this court has jurisdiction to enforce its Order.
“Further the Court found jurisdiction at the commencement of the action.
“The argument of the [father] is essentially that [neither] this court, nor any other court, can enforce the custody order of September 29, 2014. This court finds such a position to be untenable. *1197 Courts have inherent power to enforce its own orders.”
The trial court then directed the father to return the child to the mother within seven days of the entry of the order and noted that his failure to do so would constitute contempt of court for which the father would be placed in jail until he purged himself of the contempt. On September 1, 2015, the father filed a motion to alter, amend, or vacate the trial court’s August 26, 2015, order, arguing that the trial court lacked jurisdiction over the child-custody determination. The trial court entered an order denying the father’s motion on September 2, 2015. On that same date, the trial court entered an order denying a motion for a stay that had been filed by the father. The father filed a petition for a writ of mandamus in this court on that same date. The father also filed a request for a stay, which this court granted pending further order by this court.

Analysis

“ ‘A writ of mandamus is an extraordinary remedy, and it “will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” ’ ”
Ex parte Monsanto Co., 862 So.2d 595, 604 (Ala.2003) (quoting Ex parte Butts, 775 So.2d 173, 176 (Ala.2000), quoting in turn Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)).
The father argues in his petition that the trial court did not have subject-matter jurisdiction to enter its August 26, 2015, order. He asserts that Ala.Code 1975, § 30-3B-202, a part of the UC-CJEA, applies to enforcement of a child-custody determination in addition to modifications of a child-custody determination. Section 30-3B-202 provides, in pertinent part:
“(a) Except as otherwise provided in Section 30-3B-204, [Ala.Code 1975,] a court of this state which has made a child custody determination consistent with Section 30-3B-201[, Ala.Code 1975,] or Section 30-3B-203[, Ala.Code 1975,] has continuing, exclusive jurisdiction over the determination until:
“(1) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child’s care, protection, training, and personal relationships; or
“(2) A court of this state or a court of another state determines that the child, the child’s parents, and any person acting as a parent do not presently reside in this state.
“(b) A court of this state which has made a child custody determination and does not have continuing, exclusive jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under Section 30-3B-201.”
The father argues that, because § 30-3B-202(a) provides that a court of this state “has continuing, exclusive jurisdiction over the [child-custody] determination” until such time as specified in the statute, that section applies to the enforcement of the child-custody determination as well as to the modification of that determination. We disagree. Rather, § 30-3B-202(a) refers only to the continuing, exclusive jurisdiction of a court to modify the determination. That Code section does not address the jurisdiction of a court of this state to enforce its own orders and judgments. See In re Marriage of Medill, 179 Or.App. *1198 630, 646, 40 P.3d 1087, 1096 (2002) (“The UCCJEA does not expressly address the enforcement of a custody determination made ... by a court of a state that no longer has jurisdiction to modify that determination, .. .”). “A trial court has the inherent power to enforce its judgments ‘and to make such orders and issue such process as may be necessary to render [the judgments] effective.’ ” Goetsch v. Goetsch, 990 So.2d 403, 413 (Ala.Civ.App.2008) (quoting Dial v. Morgan, 515 So.2d 14, 15 (Ala.Civ.App.1987)). To the extent that § 30-3B-202(a) implicates a trial court’s power to enforce its judgments by observing that it continues to have “exclusive jurisdiction over the determination,” it refers only to a court’s power to enforce and interpret its judgments as that power is derived from state law.[3] See In re Marriage of Medill, 179 Or.App. at 647, 40 P.3d at 1097 (recognizing that a trial court’s loss of jurisdiction to modify the existing custody determination under the UCCJEA does not, by force of logic, render that determination unenforceable); Heilig v. Heilig (No. W2013-01232-COA-R3-CV, Feb. 28, 2014) (Tenn.Ct.App.2014) (not reported in S.W.3d); and Nelson v. Norys (No.2004-CA-001725-ME, July 29, 2006) (Ky.Ct.App.2005) (not reported in S.W.3d).
The father also argues that the trial court’s August 26, 2015, order was a modification of the trial court’s September 19, 2014, judgment because, he says, that order superseded the September 19, 2014, judgment by requiring that the child be returned to the mother within seven days. We disagree. The September 19, 2014, judgment allowed for the father’s visitation with the child as agreed between the mother and the father. Because it is clear from the proceedings below that the mother and the father had not agreed for the child to continue visiting the father at the time the mother filed her contempt petition on July 22, 2015, the trial court was merely enforcing its judgment and returning the child to the mother’s physical custody, which she was awarded in the September 19, 2014, judgment. We note further that, even if the trial court’s August 26, 2015, order was, in fact, a modification of the September 19, 2014, judgment, the trial court was within its jurisdiction'to modify that judgment pursuant to § 30-3B-202(b).
Pursuant to Ala.Code 1975, § 30-3B-201(a), a court of this state has jurisdiction to make an initial child-custody determination only if:
“(1) This state' is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
“(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207[, Ala.Code 1975,] or 30-3B-208, [Ala. Code 1975,] and:
“a. The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this *1199 state other than mere physical presence; and
“b. Substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships;
“(8) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
“(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).”
The father argues that the tidal court lost jurisdiction to modify the child-custody determination when the mother moved to Colorado. He cites Peterson v. Peterson, 965 So.2d 1096, 1101 (Ala.Civ.App. 2007), in which this court affirmed a judgment of the Mobile Circuit Court deferring to the jurisdiction of a North Carolina court with regard to issues of custody and visitation regarding the children at issue in that case. In Peterson, the Mobile Circuit Court had entered a judgment divorcing the parties and awarding the father sole physical custody of the parties’ children. Id. at 1097. Following the entry of the divorce judgment, the father took the children to live with him in North Carolina; although the children returned to Alabama and resided with their maternal grandparents from August 2003 until July 2004, they had remained with the father in North Carolina since July 2004. Id. The mother resided in North Carolina from December 2003 until January 2005; during that time, on December 21, 2004, the mother filed a petition in Alabama seeking a modification of the divorce judgment. Id. This court concluded that the evidence justified a determination that, pursuant to § 30-3B-202(a)(2), the Mobile Circuit Court did not have continuing, exclusive jurisdiction to adjudicate the mother’s petition because neither the children, nor the children’s parents, nor any person acting as a parent were residing in Alabama at the time the mother filed her petition for modification. Id. at 1099-1100. We further determined that § 30-3B-201 did not confer subject-matter jurisdiction upon the Mobile Circuit Court because the record established that the mother, the father, and the children were all residing in North Carolina when the mother filed her modification petition and there was no evidence in the record indicating that'a North Carolina court had declined to exercise jurisdiction. Id. at 1100.
In the present case, like in Peterson, neither the mother, nor the father,, nor the child, nor any person acting as a parent were residing in Alabama at the time the mother filed her motion for an emergency hearing on August. 19, 2015. Unlike in Peterson, however, § 30-3B-201 confers jurisdiction on the trial court in the present case. The “home state” of a child is defined in § 30-3B-102(7) as “[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding.” Because the child was visiting the father at the time the mother moved to Colorado, it is clear that Colorado was not the child’s home state at any time. Additionally, Pennsylvania is clearly not the child’s home state because the child has not lived in Pennsylvania for at least six consecutive months at any time of which this court is aware. Thus, no court of any other state would have jurisdiction pursuant to § 30-3B-201(a)(l). Indeed, the father admitted in his August 21, 2015, motion before the trial court that," for purposes of the present case, Alabama would be the home state of the child. To the extent that Pennsylvania could assert jurisdiction over an initial custody determi *1200 nation in the present case based on the father’s residing in that state and the child’s presence therein, we note that the Pennsylvania court declined jurisdiction. Specifically, the Pennsylvania court stated in its August 14, 2015, order, that it “is of the opinion that for the six months prior to the filing of these proceedings the child’s home state for jurisdictional purposes remains ... Alabama.” Thus, Alabama would have jurisdiction to make an initial child-custody determination pursuant to § 30-3B-201(a)(3). To the extent that the Pennsylvania court could not assert jurisdiction in the present case to make an initial child-custody determination, Alabama would have jurisdiction to make such a determination pursuant to § 30-3B-201(a)(4). We conclude therefore that, because the trial court would have jurisdiction to make an initial child-custody determination in the present case, the father’s argument that the trial court did not have jurisdiction to enforce its September 2014 judgment or to modify that judgment based on the operation of § 30-3B-202 is without merit.
Because the father has failed to prove a clear legal right to the order sought in his petition for a writ of mandamus, we deny the petition.
APPLICATION GRANTED; OPINION OF NOVEMBER 6, 2015, WITHDRAWN; OPINION SUBSTITUTED; PETITION DENIED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., dissents, with writing.

. Although the father argues on rehearing that the trial court had modified the child’s custody by awarding “sole physical custody” to the mother, in contrast to the North Carolina modification judgment, which awarded the parties "joint permanent custody,” we note that that aspect of the trial court’s September 19, 2014, judgment was not a departure from the North Carolina modification judgment and, thus, did not amount to a modification thereof. The trial court's judgment specified that the parties were awarded joint legal custody of the child, with the mother being awarded sole physical custody of the child, subject to the father’s visitation. Because that award merely reaffirmed the North Carolina modification judgment regarding custody of the child, albeit using different terminology, that aspect of the custody award did not amount to a modification of custody pursuant to Alabama’s version of the Uniform Child Custody Jurisdiction and Enforcement Act, Ala.Code 1975, § 30-3B-101 et seq. See Smith v. Smith, 887 So.2d 257, 262 (Ala.Civ.App.2003) ("there is but one way to interpret a judgment that awards ‘joint custody’ with an award of ‘primary physical custody’ to one parent—such a judgment must be interpreted as awarding the parents joint legal custody and awarding one parent sole physical custody, the term used by [Ala.Code 1975, § 30-3-151,] to denote a parent being favored with the right of custody over the other parent, who will receive visitation”).

. A "modification’[1] is defined in § 30-3B-102(11) as "[a] child custody determination *1195 that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination.” A "child custody determination” is defined in Ala.Code 1975, § 30-3B-102(3), in pertinent part, as "[a] judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child.” Because the trial court’s September 19, 2014, judgment modified the father’s visitation with the child, that order was a "modification” as defined in Alabama’s version of the Uniform Child Custody Jurisdiction and Enforcement Act, Ala. Code 1975, § 30-3B-101 et seq.

. We note that nothing in this opinion should be interpreted as indicating that, where the UCCJEA bestows jurisdiction (other than temporary emergency jurisdiction) upon a court of another state in a child-custody proceeding and the jurisdiction of that other state’s court is duly invoked, a court of this state may continue to exercise its jurisdiction over a child-custody determination.